FILED
2019 Feb-05  AM 09:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT "A"

ELECTRONICALLY FILED
12/21/2018 10:17 AM
68-CV-2018-900974.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
KAREN DUNN BURKS, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Cas<br>68<br><br>Date of Filing:<br>12/21/2018 | Judge Code: |
|---|---|---|---|

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### TERESA HOLCOMB v. VETERAN'S OIL, INC. ET AL

**First Plaintiff:** ☐ Business  ☑ Individual    **First Defendant:** ☑ Business  ☐ Individual
☐ Government  ☐ Other                          ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☑ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/
Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/
Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ EPFA - Elder Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**  F ☑ INITIAL FILING    A ☐ APPEAL FROM DISTRICT COURT    O ☐ OTHER

R ☐ REMANDED    T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES  ☐ NO    **Note:** Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED  ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
BOO029        12/21/2018 10:17:03 AM        /s/ LABARRON NELSON BOONE
                    Date                     Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:** ☐ YES  ☐ NO  ☑ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:** ☐ YES  ☑ NO



EXHIBIT A

ELECTRONICALLY FILED
12/21/2018 10:17 AM
68-CV-2018-900974.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
KAREN DUNN BURKS, CLERK

**IN THE CIRCUIT COURT FOR JEFFERSON COUNTY, ALABAMA**
**BESSEMER DIVISION**

| | | |
|---|---|---|
| **TERESA HOLCOMB, Individually,** | § | |
| **and as Administratrix, Surviving Spouse,** | § | |
| **Dependent and next friend of** | § | |
| **KEYONNE DERWAYNE HOLCOMB,** | § | |
| **deceased,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **VETERAN'S OIL, INC.; COOPER TIRE** | § | |
| **& RUBBER COMPANY;** | § | |
| **FREIGHTLINER, LLC A/KA DAIMLER** | § | |
| **TRUCKS NORTH AMERICA; SHELL** | § | |
| **OIL PRODUCTS COMPANY, LLC; OLD** | § | |
| **WORLD INDUSTRIES, LLC. A/K/A** | § | |
| **PEAK COMMERCIAL & INDUSTRIAL;** | § | |
| **Fictitious Defendants A-C, those persons,** | § | |
| **corporations, or other legal entities who** | § | |
| **or which designed, manufactured,** | § | |
| **advertised, sold, or otherwise placed into** | § | |
| **the stream of commerce the 1989** | § | |
| **Freightliner that is the subject matter of** | § | |
| **this lawsuit; Fictitious Defendants D-F,** | § | |
| **those persons, corporations, or other legal** | § | |
| **entities who or which designed,** | § | |
| **manufactured, engineered, advertised,** | § | |
| **sold, or otherwise placed into the stream** | § | |
| **of commerce the Cooper 295/75 22.5 tire** | § | |
| **on the 1989 Freightliner that is the subject** | § | |
| **matter of this lawsuit;** | § | |
| **Fictitious Defendants G-I,** | § | |
| **those persons, corporations, or other** | § | |
| **legal entities who or which did or should** | § | |
| **have installed, repaired, serviced,** | § | |
| **inspected, maintained or replaced the** | § | |
| **tires on the 1989 Freightliner that is the** | § | |
| **subject matter of this lawsuit;** | § | |
| **Fictitious Defendants J-L, those persons,** | § | |
| **corporations, or other legal entities who** | § | |
| **or which installed, repaired, serviced,** | § | |
| **inspected, maintained or replaced the** | § | |
| **brakes on the 1989 Freightliner that is the** | § | |
| **subject matter of this lawsuit;** | § | |

M-O those persons, corporations, or other §
legal entities whose negligence, §
wantonness, or other wrongful conduct §
combined and concurred with the §
conduct of Defendants herein to cause the §
death of Keyonne Derwayne Holcomb, all §
of said Fictitious parties are unknown to §
Plaintiff at this time but will be §
substituted By amendment when §
ascertained, §
§
§
       Defendants. §

## PLAINTIFF'S COMPLAINT

### Statement of the Parties

1.     Plaintiff Teresa Holcomb is over the age of nineteen (19) years and is a resident citizen of Autauga County, Alabama.  Mrs. Holcomb is the surviving widow of the deceased, Keyonne Derwayne Holcomb, and files this Complaint as the administratrix, surviving spouse, dependent and next friend of the deceased, Keyonne Derwayne Holcomb.  At all times material, Keyonne Derwayne Holcomb was an employee of Veteran's Oil, Inc. (hereinafter Veteran's).

2.     Defendant Veteran's is believed to be a domestic corporation with its principal place of business in Bessemer, Jefferson County, Alabama.

3.     Defendant Cooper Tire & Rubber Company (hereinafter "Cooper") is believed to be an Ohio corporation with its principal place of business in Ohio.  Defendant Cooper is engaged in the business of designing, manufacturing, and selling tires.  Upon information and belief, Defendant Cooper is doing business by agent in the State of Alabama.

4.     Defendant Freightliner, LLC a/ka Daimler Trucks North America LLC (hereinafter "Freightliner") is believed to be a foreign corporation, but at all times material, operating by agent in Jefferson County, Alabama.

5.      Defendant Shell Oil Products Company, LLC, (hereinafter "Shell") is believed to be a foreign corporation, but at all times material, operating by agent in Jefferson County, Alabama.

6.      Defendant Old World Industries, LLC a/k/a Peak Commercial & Industrial (hereinafter Old World) is believed to be a foreign corporation, but at all times material, operating in Jefferson County, Alabama.

7.      Fictitious Defendants "A" through "C" are those persons, corporations, or other legal entities who or which designed, manufactured, advertised, sold, or otherwise placed into the stream of commerce the 1989 Freightliner Truck that is the subject matter of this lawsuit.

8.      Fictitious Defendants "D" through "F" are those persons, corporations, or other legal entities who or which designed, manufactured, engineered, advertised, sold, or otherwise placed into the stream of commerce, the Cooper 295/75 22.5 tires on the 1989 Freightliner Truck that is the subject matter of this lawsuit.

9.      Fictitious Defendants "G" through "I" are those persons, corporations, or other legal entities who or which did or should have installed, repaired, serviced, inspected, maintained or replaced the tires on the 1989 Freightliner Truck that is the subject matter of this lawsuit.

10.      Fictitious Defendants "J" through "L" are those persons, corporations, or other legal entities who or which should have installed, repaired, serviced, inspected, maintained or replaced the brakes on the 1989 Freightliner that is the subject of this lawsuit.

11.      Fictitious Defendants "M" through "O" are those persons, corporations, or other legal entities whose negligence, wantonness, or other wrongful conduct combined and concurred with the conduct of Defendants herein to cause the death of Keyonne Derwayne Holcomb.

3

## Statement of the Facts

12.     On April 16, 2018, Keyonne Derwayne Holcomb was travelling southbound on I-65 in the subject 1989 Freightliner Truck in a manner reasonably foreseeable to Defendants. At all times material, the subject truck was owned by Veteran's (a Domestic corporation with their principle place of business located in Bessemer, Alabama). Keyonne Derwayne Holcomb was an employee of Veteran's and was acting in the line and scope of his employment with Veteran's.

13.     As Mr. Holcomb drove on I-65 in Alabama, the tread on the front passenger tire began to separate, causing the truck to exit the right shoulder and Mr. Holcomb to steer and/or brake to maintain control of the truck. At all times material, the brakes did not function properly causing/contributing to the loss of control of the truck. As a result of the unsafe tire and the poorly maintained brakes, the truck overturned causing Mr. Holcomb's death.

14.     At the time of the subject wreck, the subject truck had a Cooper 295/75 22.5 on the front passenger side. This defective tire detreaded, causing the death of Mr. Holcomb. At the time of the wreck, the subject Cooper 295/75 22.5 tire was fourteen (14) years old.

15.     The 1989 Freightliner Truck was designed, manufactured, assembled, sold, and/or distributed by Defendants Freightliner, and Fictitious Defendants "A" through "C". At the time of the accident, the subject truck was being operated in an intended and foreseeable manner. However, the subject Freightliner was defective and unreasonably dangerous when being so used, and Defendants knew, or should have known, that the 1989 Freightliner Truck was uncrashworthy, defective and unreasonably dangerous when being used in an intended and foreseeable manner.

4

16.     The front right tire on the 1989 Freightliner was a Cooper 295/75 22.5 that was designed, engineered, manufactured, marketed, sold, repaired, inspected, and/or distributed by Defendants Cooper, and Fictitious Defendants "D" through "I".

17.     Before the subject wreck, the fourteen (14) year old, defective tire had been inspected, serviced, maintained, repaired and/or mounted on the truck by Veteran's, Veteran's employee and/or agent and/or Fictitious Defendants "G" through "I" and "M" through "O."

18.     As a proximate result of the Defendants' failure to warn of the dangers of using a fourteen (14) year old tire on the subject Freightliner, Keyonne Derwayne Holcomb sustained severe, bodily injury, resulting in death.

19.     As a direct and proximate result of the defective Cooper tire, Keyonne Derwayne Holcomb sustained severe, bodily injury, resulting in his death.

20.     Defendant Veteran's and Fictitious Defendants "J" through "O" are those persons, corporations, or other legal entities who or which failed to install, repair, inspect, maintain or replace the brakes on the 1989 Freightliner that is the subject of this lawsuit.

21.     As a direct and proximate result of Defendant Veteran's and Fictitious Defendants' "J" through "O" failure to install, repair, inspect, maintain or replace the brakes on the 1989 Freightliner, Keyonne Derwayne Holcomb sustained severe, bodily injury, resulting in death.

<u>**COUNT I**</u>
**(Workers' Compensation)**

22.     Plaintiff re-alleges all allegations contained in paragraphs 1 through 21 and any unnumbered paragraphs of the Complaint as if set out here in full.

23.     At the time of the wreck, a relationship of employer/employee existed between Mr. Keyonne Derwayne Holcomb and Veteran's.  Mr. Holcomb and Veteran's were subject to the Workers Compensation Act of Alabama.

24.     Plaintiff avers that while employed and engaged in the business of Veteran's, and while acting within the line and scope of his employment, Keyonne Derwayne Holcomb suffered serious injury and subsequently died as a result of a wreck, which arose out of and during the course of his employment with Veteran's.

25.     A controversy has arisen as to the benefits to be paid by Veteran's to the dependents of Mr. Holcomb, through the Workers Compensation Act of Alabama, and no settlement has been made between the parties, for the death of Keyonne Derwayne Holcomb.

26.     Plaintiff further avers that Veteran's had immediate legal and actual notice or knowledge of Mr. Holcomb's death, and this claim is being brought within two years from the date of his death.  Plaintiff is entitled to, but not limited to, death benefits available under the Workers Compensation Act of Alabama.

**WHEREFORE**, Plaintiff demands judgment against Defendant Veteran's for compensation, and any and all death benefits available under the Workers Compensation Act of Alabama.

## COUNT II

27.     Plaintiff re-alleges all allegations contained in paragraphs 1 through 26 and any unnumbered paragraphs of the Complaint as if set out here in full.

28.     Defendant Veteran's and Fictitious Defendants "G" through "O" serve as third-party entities that performed maintenance, inspections, services and repair work on the brakes/tires of the subject truck and had a duty to ensure the vehicle tires and brakes were in safe working condition.

6

29.   Defendant Veteran's and Fictitious Defendants "G" through "O" negligently and wantonly breached its duty to maintain, inspect, service and repair or replace the brakes/tires on the subject truck.

30.   Because of the negligent and wanton acts of Defendant Veteran's and Fictitious Defendants "G" through "O", the tire failed and when Mr. Holcomb applied the brakes to bring the truck under control, it worsened the situation, because the brakes were dangerous and unsafe for use.

31.   It was foreseeable to Defendant Veteran's and Fictitious Defendants "G" through "O" that an emergency situation could arise, when operating the subject truck, that would require the driver to apply the brakes.

32.   Because of the negligent and wanton acts of Defendant Veteran's and Fictitious Defendants "G" through "O", when Mr. Holcomb applied the brakes to bring the truck under control, it worsened the situation, causing a loss of control of the vehicle.

33.   As a result of Defendant Veteran's and fictitious Defendants' "G" through "O" negligence and wantonness, the subject truck was placed on the road in a dangerous, unsafe and defective condition.

34.   The negligence, wantonness and other wrongful conduct of Defendant Veteran's and Fictitious Defendants "G" through "O," as alleged herein, combined and concurred, contributed to the loss of control of the subject truck, causing the death of Mr. Holcomb.

35.   Defendant Veteran's and Fictitious Defendants "G" through "O" negligently and wantonly failed to adequately insure the subject truck was safe for Mr. Holcomb to operate.

36.     As a result of the negligent and wanton manner of Defendant Veteran's and Fictitious Defendants "G" through "O," the truck was dangerous, unsafe and defective, causing/contributing to this wreck, resulting in Mr. Holcomb's untimely death.

WHEREFORE, Plaintiff demands judgment against Defendant Veteran's and Fictitious Defendants "G" through "O" for such damages as a jury may determine to be appropriate and necessary, for the purpose of punishing Defendants, and for the added purpose of protecting the public generally, by deterring such wrongful conduct in the future, along with all costs associated with this action.

## COUNT III
**(Alabama Extended Manufacturers Liability Doctrine
against Freightliner and Fictitious Defendants "A" through "C")**

37.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 36 above and any unnumbered paragraphs of the Complaint as if set out here in full.

38.     This Count is based upon the Alabama Extended Manufacturer's Liability Doctrine.

39.     Defendants Freightliner and Fictitious Defendants "A" through "C" designed, engineered, tested, manufactured, distributed, and marketed the 1989 Freightliner which is the subject matter of this lawsuit.

40.     Defendants Freightliner and Fictitious Defendants "A" through "C" reasonably expected that the 1989 Freightliner would be used in a manner in which it was being used at the time of the collision.

41.     The collision event and collision mode were reasonably foreseeable to Freightliner and Fictitious Defendants "A" through "C."

8

42.     The collision events and the collision mode were reasonably foreseeable to Freightliner and Fictitious Defendants "A" through "C".

43.     At the time of the wreck, the subject truck was unreasonably dangerous and defective, and the defects existing therein, subjected Keyonne Derwayne Holcomb to an unreasonable risk of harm, in that the subject truck, and components thereof, as designed and manufactured, were defective, because the vehicle was prone to rollover, and not crashworthy.

44.     The subject truck was defective in its design, manufacture, and/or warnings that accompanied it.   As a direct and proximate result of the defective condition of the 1989 Freightliner, Keyonne Derwayne Holcomb sustained severe, bodily injury, resulting in death.

45.     The subject truck was not crashworthy.

46.     There were reasonable and feasible design alternatives that would have prevented, or minimized, the injury or damages.

47.     As a proximate consequence of the defective condition of the subject truck, Keyonne Derwayne Holcomb suffered a severe spinal injury, resulting in his death.

WHEREFORE, Plaintiff demands judgment against Freightliner and Fictitious Defendants "A" through "C" for such damages as a jury may determine to be appropriate and necessary, for the purpose of punishing Defendants, and for the added purpose of protecting the public generally, by deterring such wrongful conduct in the future, along with all costs associated with this action.

## COUNT IV
### (Alabama Extended Manufacturers Liability Doctrine against Defendants Cooper Tire & Rubber Company, and Fictitious Defendants "D" through "I")

48.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 47 and any unnumbered paragraphs above as if set out here in full.

49.     This Count is based upon the Alabama Extended Manufacturer's Liability Doctrine.

50.     Defendants Cooper and Fictitious Defendants "D" through "I" designed, engineered, tested, manufactured, distributed, and marketed the Cooper 295/75 22.5 which is the tire that is the subject of this lawsuit.

51.     Defendants Cooper and Fictitious Defendants "D" through "I" reasonably expected that the tire would reach the ultimate user or consumer in the condition it was in at the time of the wreck.

52.     At the time of the wreck, the tire was in substantially the same mechanical and design condition as it was on the date of its manufacture and sale.

53.     At the time of the wreck, the subject Cooper 295/15 22.5 tire was being used in a manner that was foreseeable and expected.

54.     The wreck events and the wreck mode were reasonably foreseeable to Defendants Cooper, and Fictitious Defendants "D" through "I."

55.     At the time of the wreck, the subject Cooper 295/75 22.5 tire was unreasonably dangerous and defective, and the defects existing therein subjected Keyonne Derwayne Holcomb to an unreasonable risk of harm, in that the tire, as designed and manufactured, was defective and was known, or should have been known, by Cooper to have a propensity for tread separation. The subject Cooper tire was not reasonably safe by design when being used in a foreseeable manner, but, to the contrary, was defective and unreasonably dangerous when being used in a foreseeable manner for which it was intended.

56.     The subject Cooper tire was defective in its design, manufacture, and/or warnings that accompanied it.  As a direct and proximate result of the defective condition of the subject Cooper tire, Keyonne Derwayne Holcomb sustained severe, bodily injury, resulting in death.

WHEREFORE, Plaintiff demands judgment against Cooper and Fictitious Defendants "D" through "I," for such damages as a jury may determine to be appropriate and necessary for the purpose of punishing Defendants, and for the added purpose of protecting the public generally, by deterring such wrongful conduct in the future, along with all costs associated with this action.

## COUNT V
### (Crashworthiness)

57.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 56 and any unnumbered paragraphs above as if set out here in full.

58.     Freightliner and Fictitious Defendants "A" through "C" sold, distributed or otherwise placed into the stream of commerce the subject 1989 Freightliner truck.

59.     The 1989 Freightliner truck was in a defective condition, as it relates to the truck's crashworthiness, when designed, manufactured, sold, distributed and placed into the stream of commerce by Freightliner and Fictitious Defendants "A" through "C".  The risks associated with the subject truck greatly outweighed its use/utility, especially when weighed against alternative feasible designs which would have prevented, or substantially reduced, the potential for injuries to Keyonne Derwayne Holcomb.

60.     At the time of the wreck made the basis of this action, the 1989 Freightliner truck, as designed and distributed, was unreasonably dangerous, in that the truck was not crashworthy, and subjected Keyonne Derwayne Holcomb to an unreasonable risk of harm. The failure of the Freightliner truck to provide reasonable occupant protection during foreseeable accidents,

including rollovers, renders the subject truck uncrashworthy.  The defective condition of the Freightliner truck, as it relates to crashworthiness, has been known to Freightliner and Fictitious Defendants "A" through "C" as a result of numerous prior incidents and claims, including lawsuits.

61.     Defendant Freightliner and Fictitious Defendants "A" through "C" reasonably expected that the 1989 Freightliner would reach the ultimate consumer in the condition that it was in, at the time of the incident.

62.     Alternatively, Defendant Freightliner and Fictitious Defendants "A" through "C" failed to warn consumers adequately of the inherent risks in the design of the subject truck, thereby rendering the Freightliner truck not crashworthy.

63.     The 1989 Freightliner truck was defective in its design, manufacture and/or warnings that accompanied it, making it not crashworthy, and these defects were foreseeable to Defendant Freightliner and Fictitious Defendants "A" through "C".

64.     As a direct and proximate result of the defective nature of the 1989 Freightliner truck, it was not crashworthy, and Keyonne Derwayne Holcomb sustained severe, bodily injury, resulting in death.

WHEREFORE, Plaintiff demands judgment against Freightliner and Fictitious Defendants "A" through "C" for such damages as a jury may determine to be appropriate and necessary, for the purpose of punishing Defendants, and for the added purpose of protecting the public generally, by deterring such wrongful conduct in the future, along with all costs associated with this action.

## COUNT VI
**(Breach of Warranty)**

65.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 64 and any unnumbered paragraphs above as if set out here in full.

66.     Defendants Freightliner, Cooper, Shell, Old World and Veteran's, and all Fictitious Defendants expressly and/or impliedly warranted that the subject Freightliner truck and subject Cooper tire involved in the occurrence, made the basis of this Complaint, were reasonably fit and suitable for the purposes for which they were intended to be used.  The Plaintiff's claim that the Defendants breached said expressed or implied warranties of merchantability and/or fitness, for a particular purpose, in that said Freightliner truck and Cooper tire were not reasonably fit and suitable for the purposes for which they were intended to be used, but to the contrary, said Freightliner truck and Cooper tire were dangerously defective and unsafe.

67.     As a proximate result of the aforesaid breach of implied and/or expressed warranties of each of the Defendants, including the Fictitious Defendants, Keyonne Derwayne Holcomb sustained severe, bodily injury, resulting in death.

WHEREFORE, Plaintiff demands judgment against Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants for such damages as a jury may determine to be appropriate and necessary, for the purpose of punishing Defendants, and for the added purpose of protecting the public generally, by deterring such wrongful conduct in the future, along with all costs associated with this action.

13

## COUNT VII
### (Negligence)

68.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 and any unnumbered paragraphs above as if set out here in full.

69.     Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants designed, engineered, manufactured, advertised, tested, distributed, marketed, inspected, maintained, sold, or otherwise placed into the stream of commerce, the 1989 Freightliner truck and the Cooper 295/75 22.5 tire, which are the subject of occurrence made the basis of this Complaint.  Said Defendants had a duty to exercise reasonable care in providing a safe product, and to manufacture, design, engineer, advertise, test, distribute, market, inspect, sell, maintain or otherwise place into the stream of commerce a product that would not subject the truck's occupants to unreasonable risk of harm, injury, or death.

70.     However, Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants negligently designed, engineered, manufactured, advertised, tested, distributed, marketed, inspected, sold, maintained or otherwise placed into the stream of commerce the subject 1989 Freightliner truck and the subject Cooper 295/75 22.5 tire, which were operationally defective, and unreasonably dangerous to expected users or consumers.

71.     Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants reasonably expected that the subject Freightliner truck and the subject Cooper tire would reach the ultimate user or consumer in the condition they were at the time of the collision made the basis of this lawsuit.

72.     Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants were negligent in exercising due care in providing a reasonably safe product to the

14

public and failing to warn the public of any known or foreseeable dangers, from their normal and customary use.

73.    As a proximate result of the aforesaid negligence of the Defendants, including the Fictitious Defendants, Keyonne Derwayne Holcomb sustained severe, bodily injury, resulting in death.

WHEREFORE, Plaintiff demands judgment against Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants, for such damages as a jury may determine to be appropriate, and necessary for the purpose of punishing Defendants, and for the added purpose of protecting the public generally, by deterring such wrongful conduct in the future, along with all costs associated with this action.

## COUNT VIII
**(Wantonness)**

74.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 73 and any unnumbered paragraphs above as if set out here in full.

75.    Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants designed, engineered, manufactured, advertised, tested, distributed, marketed, inspected, sold, maintained or otherwise placed into the stream of commerce the 1989 Freightliner truck and the Cooper 295/75 22.5 tire which are the subject of occurrence made the basis of this Complaint. Said Defendants had a duty to exercise reasonable care in providing a safe product, and to manufacture, design, engineer, advertise, test, distribute, market, inspect, sell, maintain or otherwise place into the stream of commerce, a product that would not subject the truck's occupants to unreasonable risk of harm, injury, or death.

76.    However, Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants wantonly designed, engineered, manufactured, advertised, tested,

distributed, marketed, inspected, sold, maintained or otherwise placed into the stream of commerce the subject 1989 Freightliner truck and the subject Cooper 295/75 22.5 tire, which were operationally defective and unreasonably dangerous to expected users or consumers.

77.     Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants reasonably expected that the Freightliner truck and Cooper tire would reach the ultimate user or consumer in the condition they were at the time of the collision made the basis of this lawsuit.

78.     Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants were wanton in exercising due care, in providing a reasonably safe product to the public, and failing to warn the public of any known or foreseeable dangers, from their normal and customary use.

79.     As a proximate result of the aforesaid wanton conduct of the Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants, Keyonne Derwayne Holcomb sustained severe, bodily injury, resulting in death.

WHEREFORE, Plaintiff demands judgment against Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants for such damages as a jury may determine to be appropriate, and necessary for the purpose of punishing Defendants, and for the added purpose of protecting the public generally, by deterring such wrongful conduct in the future, along with all costs associated with this action.

## COUNT IX
**(Negligence/Veteran's, Shell, Old World and Fictitious Part Defendants "G" through "I")**

80.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 79 and any unnumbered paragraphs above as if set out here in full.

81.     Defendants Veteran's, Shell, Old World and Fictitious Defendants "G" though "I" negligently and wantonly inspected, repaired, serviced and maintained the subject 1989 Freightliner truck by mounting or failing to remove the Cooper 295/75 22.5 tire on said truck. Said Defendants had a duty to exercise reasonable care in providing adequate inspections, repairs, and maintenance to consumers, and to properly warn of any known hazards that would subject the truck's occupants to unreasonable risk of harm, injury, or death.

82.     Defendants Veteran's, Shell, Old World and Fictitious Defendants "G" through "I" negligently and wantonly failed to warn, inspect, repair, and maintain the 1989 Freightliner truck by installing or failing to remove the Cooper 295/75 22.5 tire on said truck, which was operationally defective and unreasonably dangerous to expected users or consumers.

83.     Defendants Veteran's, Shell, Old World and Fictitious Defendants "G" through "I" were negligent and wanton in exercising due care, by not providing reasonable inspections, repair, and maintenance, and by placing said tire or allowing said tire to remain on the truck, and failing to warn of known hazards associated with operating a truck with a tire that is approximately 14 years old.

84.     At the time of the collision, the tire was being used in a manner that was foreseeable.

85.     Defendants Veteran's, Shell, Old World and Fictitious Defendants "G" through "I" failed to adequately install, inspect, repair, remove, service and maintain the tires/brakes on the subject truck, which made it unsafe, defective and unreasonably dangerous for its intended use.

86.     As a proximate result of the aforesaid negligent and wanton conduct of Defendants Veteran's, Shell, Old World and Fictitious Defendants "G" through "O", Keyonne

Derwayne Holcomb sustained severe, bodily injury, resulting in death.

WHEREFORE, Plaintiff demands judgment against Defendants Veteran's, Shell, Old World and Fictitious Defendants "G" through "L," for such damages as a jury may determine to be appropriate and necessary, for the purpose of punishing these Defendants, and for the added purpose of protecting the public generally, by deterring such wrongful conduct in the future, along with all costs associated with this action.

## COUNT X
### (Wrongful Death)

87.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 86 and any unnumbered paragraphs above as if set out here in full.

88.     At the time of his death, Keyonne Derwayne Holcomb was thirty-nine (39) years old.  Plaintiff, Teresa Holcomb, brings this action as the surviving spouse and Administratrix of the Estate, for full value of his life.

89.     Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants had a duty to Plaintiff to act reasonably.

90.      Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants breached that duty.

91.     As a direct and proximate cause of the negligence and recklessness of Defendants Veteran's, Freightliner, Cooper, Shell, Old World and all Fictitious Defendants, Plaintiff Keyonne Derwayne Holcomb, was killed.

WHEREFORE, Plaintiff demands judgment against Defendants Veteran's, Shell, Old World and Fictitious Defendants, and all Fictitious Defendants, for such damages as a jury may determine to be appropriate, and necessary for the purpose of punishing Defendants, and for the

added purpose of protecting the public generally, by deterring such wrongful conduct in the future, along with all costs associated with this action.

## COUNT XI
**(Negligent and Wanton Failure to Warn against Defendants Freightliner,**
**Cooper, Veteran's, Shell, Old World and Fictitious Defendants "A" through "I")**

92.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 91 and any unnumbered paragraphs above as if set out here in full.

93.     Defendants Freightliner, Cooper, Veteran's, Shell, Old World and Fictitious Defendants "A" through "I" had a duty to warn of known hazards caused by the Cooper 295/75 22.5 tire, which was on the subject truck.

94.     Defendants Freightliner, Cooper, Veteran's, Shell, Old World and Fictitious Defendants "A" through "I" breached the duty to warn users that as tires age, they become prone to detread or fail, even when there is adequate tread on the tire.

95.     Defendants Freightliner, Cooper, Veteran's, Shell, Old World and Fictitious Defendants "A" thought "I" failed to adequately install, inspect, repair, remove, service and maintain the tires on the subject truck, which made it unsafe, defective and unreasonably dangerous for its intended use.

96.     As a proximate result of Defendants, including the Fictitious Defendants, negligent and wanton failure to warn of the increased dangers associated with aging tires, Keyonne Derwayne Holcomb sustained severe, bodily injury, resulting in death.

WHEREFORE, Plaintiff demands judgment against Defendants Freightliner, Cooper, Veteran's, Shell, Old World and Fictitious Defendants "A" through "I" for such damages as a jury may determine to be appropriate and necessary for the purpose of punishing Defendants and

19

for the added purpose of protecting the public generally by deterring such wrongful conduct in the future along with all costs associated with this action.

/s/ LaBarron N. Boone
LABARRON N. BOONE (BOO029)
**_Counsel for Plaintiff_**

OF COUNSEL

BEASLEY, ALLEN, CROW, METHVIN,
  PORTIS & MILES, P.C.
218 Commerce Street
Post Office Box 4160
Montgomery, Alabama  36103-4160
(334) 269-2343 (Telephone)
(334) 954-7555 (Facsimile)
Labarron.boone@beasleyallen.com


**<u>JURY DEMAND</u>**

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.**

/s/ LaBarron N. Boone
OF COUNSEL

**Serve Via Personal Service as follows:**
Veteran's Oil

**Serve Via Certified Mail as follows:**
Shell
Old World Industries, LLC a/k/a Peak Commercial & Industrial
Freightliner a/k/a Daimler Trucks North America LLC

ELECTRONICALLY FILED
12/21/2018 10:17 AM
68-CV-2018-900974.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
KAREN DUNN BURKS, CLERK

### IN THE CIRCUIT COURT FOR JEFFERSON COUNT
### BESSEMER DIVISION

| | | |
|---|---|---|
| **TERESA HOLCOMB, Individually,** | § | |
| **and as Administratrix, Surviving Spouse,** | § | |
| **Dependent and next friend of** | § | |
| **KEYONNE DERWAYNE HOLCOMB,** | § | |
| **deceased,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **VETERAN'S OIL, INC., et al.** | § | |
| | § | |
| **Defendants.** | § | |

### PLAINTIFF'S FIRST CONSOLIDATED DISCOVERY
### TO DEFENDANT COOPER TIRE & RUBBER COMPANY

Plaintiff in the above-styled action serve these Interrogatories, Requests for Production and Requests for Admission upon Defendant Cooper Tire & Rubber Company (hereinafter "this Defendant"), and request that they be answered fully in writing and under oath within the time provided by the Alabama Rules of Civil Procedure. Each interrogatory, request for production, and request for admission is addressed to the knowledge and information of this Defendant, as well as, this Defendant's attorneys, investigators, agents, employees, and other representatives. These interrogatories, requests for production of documents, and requests for admission shall be deemed continuing so as to require supplemental answers if the person or entities to whom these interrogatories, requests for production, and requests for admission are addressed obtain further information between the time the initial answers are served and the time of trial.

If a privilege is claimed as to any document otherwise covered by a Request for Production, Plaintiff requests that each document to which privilege is claimed be identified with such particularity and in such a manner that the Court, and not counsel unilaterally, may determine whether the document is indeed entitled to privileged status.

## DEFINITIONS AND NOTES

A.        "Document" means every writing, printing, record, graphic, photographic or sound reproduction of every type and description that is in your possession, control, custody and knowledge which refers to or was prepared before, during, and after the incident or search defined below, including but not limited to, correspondence, memoranda of agreements, assignments, meeting minutes, memoranda, stenographic or handwritten notes, diaries, notebooks, account books, orders, invoices, statements, bills, checks (or check stubs or records), vouchers, purchase orders, reports, studies, surveys, charts, maps, analyses, publications, books, pamphlets, periodicals, catalogues, brochures, schedules, circulars, bulletins, notices, instructions, manuals, journals, data sheets, work sheets, statistical compilations, data processing cards, microfilms, computer records (including printouts, floppy or other magnetic storage media), tapes, photographs (positive or negative prints), drawings, films, videotapes, pictures, voice recordings; every copy of such writing or record when such copy contains any commentary or notation whatsoever that does not appear on the original. Plaintiff expressly intends for the term "Document" to include any attachments or exhibits to the requested document, or any other documents referred to in the requested document or incorporated into the document by reference.

B.        "Person" means any natural person, corporation, partnership, proprietorship, association, organization, group of persons, or any governmental body or subdivision thereof.

C.        "Subject Wreck" refers to the wreck that occurred April 16, 2018, on I-65 in Montgomery County, Alabama.

D.        Plaintiff requests that this Defendant not apply any stamp or markings or other document management numbers, symbols, or colored inking or striping to the requested documents so as to obscure any information contained on the documents or copies made there from or so as to interfere with character recognition software and document scanning devices, thus preserving the legibility of all such documents and ensuing copies in their entirety.

2

E.      Plaintiff requests that this Defendant respond to and supplement these and all future document requests by producing the requested documents segregated according to request number and identifying the documents produced in a formal written pleading and stating which numbered request they respond to. Plaintiff requests that this Defendant not produce unidentified documents via letters that state essentially nothing more than "here are some more responsive documents."

F.      If in response to Plaintiff's request for production of documents, this Defendant fails to disclose any document and then at a later date discloses such document to Plaintiff, please provide full information about how such existence of this additional document was "discovered" by this Defendant, by whom such additional document was "discovered," when such additional document was "discovered," who made the decision to disclose such additional document to Plaintiff, when that decision was made, and in detail, why such additional document was not disclosed to Plaintiff in this Defendant's initial responses.

## REQUESTS FOR ADMISSIONS

1.      Please admit that this Defendant has conducted no scientific studies to determine whether tires will deteriorate over time to the point of being unsafe for use, regardless of the amount of tread remaining.

2.      Please admit that the Cooper line of tires was never the subject of a recall.

3.      Please admit that the Cooper 295/72 22.5 line of tires was defective.

4.      Please admit that a tire's age can affect the tire's performance.

5.      Please admit that this Defendant has been made aware of numerous occurrences where the Cooper 295/72 22.5 detreaded.

6.      Please admit that this Defendant has been named in lawsuits brought because a Cooper 295/72 22.5 was defective.

3

7.     Please admit that this Defendant has been named in lawsuits brought because a Cooper 295/72 22.5 detreaded.

8.     Please admit that this Defendant currently provides consumers with a warning that tires should be taken out of service and replaced after a pre-determined period of time, even if they do not have any visible damage.

9.     Please admit that this Defendant posted warnings about tire aging.

10.     Please admit that this Defendant posted warnings addressing the fact that tires degrade over time even when they are not being used.

11.     Please admit that this Defendant has made recommendations concerning the useful life of a tire.

12.     Please admit that this Defendant recommends that a tire should be replaced after six (6) years.

13.     Please admit that this Defendant recommends that a tire should be replaced after ten (10) years.

14.     Please admit that this Defendant did not supply any warnings to customers concerning tire aging.

15.     Please admit that this Defendant did not supply any warnings to customers concerning a tire's usefulness based on age.

16.     Please admit this Defendant recommends a tire over six (6) years old be replaced irrespective of the amount of tread on the tire.

17.     Please admit this Defendant recommends a tire over ten (10) years old be replaced irrespective of the amount of tread on the tire.

18.     Please admit that this Defendant has warnings that heat caused by hot climates or frequent high loading conditions can accelerate the aging process.

19.     Please admit that as a tire ages its components dry out.

20.     Please admit that as a tire ages its rubber deteriorates.

21.     Please admit that as a tire ages the adhesion breaks down.

22.     Please admit deterioration occurs as a tire ages affecting its safety whether it is in use or being stored.

23.     Please admit that this Defendant did not send direct mail warnings to customers that discussed replacing tires after six (6) years.

24.     Please admit that this Defendant did not supply warnings via direct mail to tire service centers and retail stores concerning tire aging.

## INTERROGATORIES

1.      If you contend that your company is not liable for this wreck, state in exact detail the reasons for that contention.

2.      Please identify each party by proper name and address who designed, manufactured, marketed, and sold the subject Cooper 295/72 22.5 tire.

3.      Please identify all articles, literature, testing, or analyses conducted to determine how tire age affects tire durability.

4.      Please state whether this Defendant, or its affiliated and/or predecessor corporations, have received complaints of injury or death that allegedly occurred as a result of a Cooper 295/72 22.5 tire tread belt separation from 2004 through the date of responding to these interrogatories.

5.      Does this Defendant have any certified approvals for retread or service tires?  If so, please identify those companies in the State of Alabama that are certified or have been approved by Cooper to retread tires.

6.      Please state whether Cooper retains lists, provides or requires certain standards of qualification for those who can retread the tires.

7.      Please describe how the oxidation process of affects a retreaded tire.

8.     Please identify any claims, complaints and lawsuits concerning tires that allegedly suffered tread separations more than seven (7) years after the date of manufacture.

If the answer to the foregoing is "yes", as to each such complaint, please state:

     a.  Date of accident;

     b.  Date complaint was received;

     c.  Names and addresses of persons making the complaint;

     d.  Name and address of attorney representing such individuals;

     e.  Nature of injuries;

     f.  Description of tire involved;

     g.  Description of circumstances of accident;

     h.  Status of the case;

     i.  Whether a copy of the complaint is available; and

     j.  Location of any information in reference to said complaint(s).

     in reference to said complaint(s).

9.     Has this Defendant, or its affiliates and/or predecessor corporations, ever modified, or considered but rejected a modification to, Cooper 295/72 22.5 tire with the intent of reducing the potential for tread belt separation by change in design?

10.     If the answer to the foregoing is in the affirmative, please indicate the design change considerations or design change applications, including:

     a.  The nature of the design change;

     b.  The date the design was considered;

     c.  The date the design was incorporated;

     d.  The description of the tire(s) which incorporated said design change(s);

     e.  The purpose for the design change;

     f.  The results of the design change; and

g.  Whether any testing was conducted to determine the appropriateness of the design change, and if so, the nature of the testing and results thereof, the location of the testing, dates of testing, individuals who participated in such testing.

11.    Is it the contention of this Defendant that the occurrence alleged in the Plaintiffs' complaint was caused, in whole or in part, by some person, firm or corporation other than the Defendant?  If so, please state:

a.  The full identity of each person, firm or corporation, including name, occupation, title, address and professional relationship to you, if any; and

b.  How and in what manner such other persons, firms or corporations caused or contributed to cause the alleged occurrence.

12.    Please provide an organization flow chart for this Defendant showing job titles and who reports to whom for the Chairman of the Board, President, Engineering Department Personnel, Marketing Department Personnel and Safety Department Personnel or Safety Personnel, and Production and Inspection Personnel at the plant where the tire in question was manufactured.

13.    Identify this Defendant's employees or independent expert witnesses who have testified as an expert, by deposition or in open court, or if no testimony given, with whom you consulted as an expert, in connection with actual or claimed instances of injury as a result of prior Cooper 295/72 22.5 tire tread separation cases, including the following information for each such expert or consultant:

a.    The name, address and title of each such person;

b.    His educational background and a summary of his work experience;

    c.      The caption of the case, giving the names of the parties, the name of the court and the cause number of the case in which each individual's expertise was sought;

    d.      The name and last known address of Plaintiffs' counsel in each such case;

    e.      The nature of the case;

    f.      By whom the expert was hired;

    g.      Whether a written report was made and, if so, whether the expert has a copy; and

    h.      Whether the expert gave a deposition or trial testimony and, if so, whether the expert has a copy of the deposition transcript or trial transcript.

14.      Please identify the date the subject tire was manufactured, location it was manufactured, and said tire's physical description, including, but not limited to, the size, specifications, and skim compound.

15.      Identify any and all persons who:

a.  Were responsible for quality control or quality assurance with respect to manufacture of the tire in question and/or similar tires during the period beginning 1999 through 2004 (1) on a company-wide basis, (2) on a plant-wide basis, and (3) on a less than plant-wide basis;

b.  Were responsible for, or knowledgeable of, any statistical, quantitative or numerical records regarding tread belt separation tire failures, tire defects, or tires returned for warranty adjustment during the period beginning 1999 through the date of your answer;

c.  Are knowledgeable of the business and corporate history of Defendant, (including predecessors, affiliates, and successors in interest) with respect to the subject of legal responsibility for the design, manufacture and sale of the tire in question;

d. Are knowledgeable of the past and present business relationships between any of the named Defendants (including predecessors, affiliates, and successors in interest);

e. Are knowledgeable of the location, length of time, and conditions of storage of the tire in question between the date of manufacture and the date of retail sale to Plaintiff;

f. Are knowledgeable regarding the causes of tread, ply, belt, and/or cord separation in steel-belted radial tires;

g. Are knowledgeable regarding interpretation of the physical evidence regarding tread, ply, belt and/or cord separation;

h. Are knowledgeable regarding the effect of tread, ply, belt, and/or cord separation on the controllability of a vehicle upon which a Cooper 295/72 22.5 tire is in use at the time of such a failure;

i. Are knowledgeable regarding alternative manufacturing methods or quality control measures which have the capability to improve tread, ply, belt and/or cord retention attributes in Cooper 295/72 22.5  tires;

j. Are knowledgeable regarding the design of the tire in question, or subsequent design changes to similar tires, as it pertains to the following:

a. Characteristics related to tread, ply, belt, and/or cord adhesion or resistance to tread, ply, belt and/or cord separation;

b. Characteristics related to storage life;

c. Alternative designs related to tread, ply, belt, and/or cord adhesion;

d. Alternative designs related to storage life; and

e. History of the design of the tire with respect to the above characteristics; and,

k. Are knowledgeable regarding any and all U.S. Department of Transportation investigations or inquiries (by whatever name called) into tread, ply, belt, and/or cord separation involving Cooper 295/72 22.5 brand tires.

9

16.     State in detail your contentions as to the reasons why pieces of the tire in question, including substantial portions of the outer belt, separated from the tire.

17.     State whether written quality assurance inspection reports are made by any of your employees with reference to quality assurance inspections and the names, addresses, and titles of such employees at the plant where the subject tire was manufactured.

18.     State whether any such quality assurance inspections revealed any defects in any tires manufactured by you during the five (5) years prior to said date.

19.     If your answer to Interrogatory No. 23 is in the affirmative, state what such defects were, the manner in which they were discovered, and the specific DOT number of the tires.

20.     Please detail the relationship between this Defendant and other named Defendants, including the date such relationship was established, the nature of the relationship, the names of individuals who were employed by or serve as officers and directors of each corporation, common facilities, including, but not limited, test facilities, design facilities, office facilities, distribution facilities, and promotion or advertising facilities.

21.     Please provide a detailed description of the belt wire configuration of the subject tire.

22.     Please provide the name of the supplier for belt wire for the subject tire.

23.     Please explain in detail the process, procedure or mechanism for coating belt wires in the subject tire with brass.

24.     Explain in detail the method of shipment for the belt wire for the subject tire from the supplier, including but not limited to, rail or truck transportation, detailed specifics of method of storage prior to shipment and upon receipt of belt wire by this Defendant.

25.     Please describe in detail the chemical composition of the brass utilized to coat the steel wires in the subject tire line steel belts.

10

26.     Describe the purpose for incorporation of nylon overlays, cap plies, nylon safety belts, or nylon belt edge strips in the above tires.

27.     Describe any and all problems identified related to failures in the subject tire involving steel belt edges sawing effect as a contribution to belt separation and produce all documents of Defendants discussing such problems.

28.     Please state the name and address of the individual(s) participating in responding to these interrogatories on behalf of this Defendant.

29.     Do you have any liability insurance coverage, including excess and/or umbrella coverage, that protects you from damages sought by the Plaintiffs?  If so, what is the name of the insurance company having such coverage and what is the extent of coverage provided by the policy or policies of insurance?   What is the policy number of each such policy?   If this Defendant is "self-insured" to any extent, what assets are available to satisfy a judgment less than the excess coverage?

30.     Please state whether this Defendant, or its affiliated and/or predecessor corporations, ever voluntarily undertook to recall the subject tire.  If your answer is in the affirmative, please state in detail the specific reasons for the recall and steps taken to ensure the tire was in fact recalled.

31.     Please identify the specific path of distribution of the tire made the basis of this lawsuit from the time it was manufactured up until the time it was installed on Plaintiffs' vehicle.

## REQUEST FOR PRODUCTION

1.     If this Defendant claims that Keyonne Derwayne Holcomb was contributorily negligent please produce any evidence that supports this claim.

2.     If this Defendant claims that the injuries or damages suffered by the Plaintiff were proximately caused by the tortuous acts or omissions of a third party over whom the Defendant has or had no control, please produce any evidence that supports this claim.

3.      Please produce documents showing how the oxidation process affects a retreaded tire.

4.      Please produce design documents and any other documents indicating design modifications to the subject Cooper 295/72 22.5 tires.

5.      Please produce documents that identify claims, complaints and lawsuits concerning tires that allegedly suffered tread separations more than seven (7) years after the date of manufacture.

6.      Please produce copies of complaints, petitions, written complaints, claims or demand letters concerning tires that allegedly suffered tread separations more than seven (7) years after the date of manufacture.

7.      Please produce documents showing the proper and safe method for retreading the subject tire.

8.      Please produce documentation, literature, and/or advertising that discuss the useful life for a tire that has been retread.

9.      Please produce any advertisement, literature and/or documents that discuss the number of times a tire can be safely retreaded.

10.      Please produce advertisement, literature, and/or bulletins that discuss the proper method for retreading Cooper's tires.

11.      Please produce all bulletins, manuals, documents etc., that are provided to companies that retread tires.

12.      Please produce any and all documents of retreads or service of tires in the State of Alabama that are certified or have been approved by Cooper to retread tires.

13.      Please produce lists of those who provide or require certain standards of qualification for those who can retread the tires for Cooper.

14. Please produce documents showing how the oxidation process affects a retreaded tire.

15. Please produce documents, testing, engineer drawings, design drawings etc., that help show or explain when a tire can be retreaded, and under what conditions a tire should not be retreaded.

16. Please produce any warnings, technical bulletins, or any document concerning tire aging, the useful life of a tire, when a tire should be replaced even if it is unused, and/or how aging affects a tire.

17. Please produce the belt wire specifications for the subject tire.

18. Please produce copies of adjustment records for all tires manufactured by this Defendant with nylon overlays, 0° cap plies, or nylon belt edge strips for five years prior to the date of manufacture of the subject tire through the present.

19. Please produce copies of adjustment records for the subject tire line and all similar green tires for five years prior to the date of manufacture of the subject tire through the present.

20. Please produce copies of "incident reports" or "product liability reports" for the subject tire line and all similar green tires for five years prior to the date of manufacture of the subject tire through the present.

21. Please produce copies of "incident reports" or "product liability reports" for all tires manufactured by this Defendant with nylon overlays, 0° cap plies, or nylon belt edge strips for five years prior to the date of manufacture of the subject tire through the present.

22. Please produce the personnel file of the individual(s) who built the subject tire, including but not limited to, last known address and present employment status.

23. Please produce a copy of a label from the tire solvent used in the first or second stage tire building process for the subject tire, including but not limited to, the MSDS

13

information labeling and information reflecting the manufacturer and chemical composition of such tire solvent.

24.     Please produce a copy of the repair standard operating procedure manual or booklet utilized at the plant where the subject tire was manufactured at the time this tire was manufactured.

25.     Please produce copies of any and all videotapes in possession of this Defendant depicting the processes used by this Defendant's for manufacturing radial passenger or light truck tires.

26.     Please produce copies of any and all claims records or data for the Cooper 295/75 22.5 or any other truck tire manufactured by this Defendant which has similar "green tire" construction for seven years prior to the date of manufacture of the subject tire through the present.

27.     Please produce any and all documents which reflect injuries, accidents, failures in service, or malfunctions of Cooper 295/75 22.5 tires or similar tires produced by this Defendant for seven years prior to the date of manufacture of the subject tire through the present.

28.     Please produce any and all written, photographic, or video documentation which reflects the effect of factors such as load, speed, inflation pressure, weather, road surface, tread wear, under inflation, vehicle handling, and operator input on the performance of tires in the event of tread separation and/or deflation during normal highway driving conditions.

29.     Please produce any and all documents which reflect legal action brought against this Defendant for alleged tread and/or belt separations or in-service "blowout" failures of tires. Please include the complaint and all other documents reflecting the date the claim was made, the name of the plaintiff(s) or complaining party, the nature of the defect alleged, the place and date of manufacture of the tire, and, if a verdict or settlement was reached, the amount of the verdict or settlement.

14

30.    Please produce copies of any and all complaints brought against this Defendant for alleged tread separation and/or belt separation of tires which resulted in personal injury or property damages for five years prior to the date of manufacture of the subject tire through the present.

31.    Please produce copies of any and all complaints brought against this Defendant for alleged tread separation and/or belt separation of tires designated as Cooper 295/75 22.5 tires or any other tire manufactured by this Defendant of similar "green tire" construction for five years prior to the date of manufacture of the subject tire through the present, which resulted in personal injury or property damages.

32.    Please produce copies of any and all depositions of tire expert witnesses from prior tread belt separation litigation.

33.    Please produce copies of air permeability testing data, specifications, and standards for the Cooper 295/75 22.5 and similar green tires prior to the date of manufacture of the subject tire.

34.    Please produce all documents relating to the subject of the potential degradation effects resulting from aging of otherwise undamaged tires in service, in storage, and in vehicular spare tire storage.

35.    Please produce all documents concerning recommendations, prohibitions, or limitation concerning the placement into service of used tires, exhibiting no apparent damage, but whose prior service and storage history is unknown.

36.    Please produce all documents of this Defendant and other tire manufacturers concerning recommendations, prohibitions, or limitations regarding the practice of storing and selling used tires which have been stored outdoors in the sunbelt, southern climates, and other weather environments and/or conditions in the United States.

37.     Please produce all documents relating to the development of standards concerning tire aging, age testing, and recommendation, internal practices and/or warnings to consumers concerning the potential effects of aging in tire performance.

38.     Please produce all documents regarding whether or not to warn consumers about the potential effects of aging on a tire's performance.

39.     Please produce all documents relating to tire expiration dates or a date in which a tire they should be taken out of service and/or no longer used or tested to determine whether they should remain in service.

40.     Please produce all articles/papers authored, edited, or contributed to by current or former employees of this Defendant related to tire aging and aging effects on tire performance.

41.     Please produce all articles/papers in your possession, custody, or control relating to the issue of tire aging and the effects of aging on tire performance.

42.     Please produce the "Green Tire" specifications for the subject tire at issue in this case.

43.     Please produce the "Cured Tire" specifications for the subject tire at issue in this case.

44.     Please produce all documents that identify and quantify the anti-degradants incorporated into the subject tire at issue in this case.

45.     Please produce all documents relating to recommended warnings or guidelines concerning the use of spare tires and tire storage including the typical and maximum temperatures reached by the tire in spare wheel racks of automobiles under normal and abnormal engine functioning circumstances.

46.     Please produce all documents relating to the use of anti-degradants to combat or diminish the adverse effects of tire aging for all tire types and all documents which relate to the testing methods available to determine the rate of depletion of anti-degradant in tires during

16

natural and simulated aging of tires in service and/or storage.

47.    Please produce all documents relating to test or simulation of real-world aging and its effects on the performance of tires including all documents concerning the usefulness and the limitations of peel testing in this regard.

48.    Please produce all documents relating to the effects of age-accelerating agents, such as oxygen, ozone, pro-oxidants, light, weather, and radiation on tire performance.

49.    Please produce the results of any age testing performed on tires manufactured by this Defendant or other tires, including the following:

      (a)    heat aging;

      (b)    oxygenated inflation pressure aging;

      (c)    air pressure heat testing;

      (d)    accelerated light exposure testing;

      (e)    outdoor exposure testing;

      (f)    weather resistance testing;

      (g)    oven aging;

      (h)    ozone testing;

      (i)    tread separation testing;

      (j)    peel testing; and

      (k)    adhesion testing.

50.    Please produce all owner's manuals for vehicles sold anywhere in the world, especially Europe, the United States, Japan, and South America known to this Defendant, in which instructions and warnings are provided concerning problems arising from tire aging and the time period after which aged tires should be remove from service.

51.    Please produce all press releases or articles relating to the issue of tire aging and its effects upon performance.

52.     All testimony in this Defendant's possession, custody, or control relating to the issue of tire aging and its effects upon performance.

53.     Please produce copies of any and all documents this Defendant has received pursuant to any and all non-party subpoenas issued at your request.

54.     Please produce any and all photographs, motion pictures, videotapes, films, pictures, drawings, or diagrams depicting the Plaintiffs, the product, or scene made the basis of this lawsuit.

55.     Please produce all documents received from, sent to, and/or created by NHTSA or any other governmental agency/authority related to the issue of tire aging and its effects upon tire performance.

56.     Please produce all documents relating to real world tread separation incidents involving a tire manufactured by this Defendant that separated and was more than five-years-old.

57.     Please produce all documents, studies, articles, memos, or other materials relating to warnings or statements issued by any automobile and/or vehicle and tire manufacturers relating to the replacement of an undamaged tire after six years.

58.     Please produce all documents, studies, articles, memos, or other materials relating to any warnings and/or statements of automobile and tire manufacturers that have determined tires should be replaced after a pre-determined period of time.

59.     Please produce all documents related to this Defendant's tire warranty expiration, including but not limited to, the warranties of tires sold in U.S.A.

60.     Please produce all documents that related to non-destructive testing to determine whether or not an otherwise undamaged tire has aged to the point that it should be removed from service.

61.     Please produce all warnings to consumers of the potential adverse performance effects of aging on this Defendant's tire lines.

18

62.     Please produce all recommendations to consumers regarding when a tire should be removed from service or inspected in order to determine whether it should be removed from service due to age.

63.     Please produce any and all documents concerning the relationship between the tubeless inner liner thickness and/or composition and the minimization of aging degradation in otherwise sound tires.

64.     Please produce any and all documents concerning or dealing with countermeasures to minimize age degradation, including but not limited to, the design of the tubeless inner liner and/or adjustment in design and/or material of other components of steel belted radial tires.

65.     Please produce any and all documents and/or data making comparisons of different tire manufacturers, tires, and different tire lines manufactured by this Defendant for aging degradation.

66.     Please produce any and all documents and/or data making comparisons for aging degradation between green or cured tire manufacturing specifications involving any and all this Defendant's tire lines and models.

67.     Please produce any and all documents in your possession, or in the possession of your counsel, which refer or relate to Cooper 295/75 22.5.

68.     Please produce any and all evidence collected by this Defendant, or anyone acting on its behalf, from the scene of the incident made the basis of this lawsuit.

69.     Please produce copies of any and all liability insurance policies, including any underlying, general, liability, excess, and/or umbrella coverage, that protects you from damages sought by the Plaintiff.

70.     Please produce any and all expert reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if the expert is prepared to,

19

or may, testify in this case. This Request should also encompass any report prepared by any other person which has been reviewed by any expert intended to testify at the trial of this case.

71.     Please produce copies of any and all statements previously made by the Plaintiffs concerning the subject matter of this lawsuit, including any written statements signed or otherwise adopted or approved by the Plaintiffs and any stenographic, mechanical, electrical, or other type of recording or any transcription thereof made by the Plaintiffs hereto and recorded.

72.     Please produce copies of any and all documents obtained in connection with this lawsuit, from any source whatsoever, of any nature and/or kind.

73.     Please produce copies of any and all documents, reports, or other written records pertaining to any investigation of this incident which were generated by persons other than this Defendant.

74.     Please produce copies of any and all documents, photographs, or other physical evidence which will be utilized by you and offered as evidence at the trial of this case.

75.     Please produce copies of any and all documents of whatsoever kind and nature which support your responses to Plaintiffs' Interrogatories.

76.     Please produce copies of any and all documents, not specifically identified above, which is in any way related to the Plaintiffs named in this lawsuit, other Defendants named in this lawsuit, the subject tire, subject vehicle, and/or the subject wreck which is the basis of this lawsuit.

77.     Please produce any and all warnings, instructions, cautions, or any documentation of whatever name and identification which addresses and directs consumers in proper storage, service, maintenance, repair, care and usage of the subject tire(s).

78.     Please produce any and all previously entered and/or agreed to confidentiality and/or protective orders which contain sharing provisions that are related to cases involving the subject tire.

79.    Please produce any warnings, literature, and/or bulletins posted on this Defendant's website or sent by this Defendant to any tire retailers and/or service centers concerning replacing tires after six (6) years or any other period of time.

80.    Please produce all tests, studies, analysis, research, warnings, or recommendations issued or posted by this Defendant concerning how tire aging affects tire safety.

81.    Please produce any warnings, recommendations, bulletins, etc. this Defendant has authorized, or this Defendant is aware of concerning useful life of tires and how tire age affects safety.

82.    Please produce all studies, reports, data, recommendations, or warnings this Defendant is aware of concerning when a tire should be replaced due to aging.

83.    Please produce all data, analysis, reports, and/or case investigations this Defendant has collected concerning failures and the failure rate of Cooper 295/75 22.5 tires on its vehicles and others.

84.    Please produce any documents in this Defendant's possession that compares the failure of the Cooper 295/75 22.5 tire to other tires.

85.    Please produce documents identifying all automobile and/or tire manufacturers, dealers, and retailers who have made recommendations or put on warnings concerning when to replace a tire due to its age.

86.    Please produce studies, reports, tests, accident investigations, and analysis in this Defendant possession that discusses why a tire should be replaced after a certain age.

87.    Please produce any studies, tests, reports, accident investigations, and analysis that explain what happens to tires as they age and how it affects the useful life of the tire and oxidation process over time.

88.     Please produce any information this Defendant developed or is aware of that addresses whether the aging process causes the materials used in tires to dry out, whether the rubber deteriorates, and whether it causes the breakdown of the adhesion components of the tire.

89.     Please produce any warranty information in this Defendant's possession concerning the Cooper 295/75 22.5.

/s/ LaBarron N. Boone
LABARRON N. BOONE (BOO029)
*Counsel for Plaintiff*

OF COUNSEL:

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103-4160
(334) 269-2343
Labarron.boone@beasleyallen.com

**TO BE SERVED WITH COMPLAINT**

**IN THE CIRCUIT COURT FOR JEFFERSON COUNTY, ALABAMA**
**BESSEMER DIVISION**

| | | |
|---|---|---|
| **TERESA HOLCOMB, Individually,** | § | |
| **as Surviving Spouse and Dependent of** | § | |
| **KEYONNE DERWAYNE HOLCOMB,** | § | |
| **deceased,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **VETERANS OIL, INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S NOTICE OF 30(b)(5) & (6) VIDEO DEPOSITION OF**
**COOPER TIRE & RUBBER COMPANY**

Please take notice that pursuant to the *Alabama Rules of Civil Procedure* 30(b)(5) and (6), Plaintiff shall take the videotaped deposition of **Cooper Tire & Rubber Company** (hereinafter "Cooper," "corporation" or "defendant") representative. Said deposition(s) shall be upon oral examination before an officer authorized by law to administer oaths and shall be videotaped by a certified videographer. Pursuant to Rule 30(b)(5) & (6), the corporation shall produce the documents and things requested herein and "shall designate one or more officers, directors, managing agents, or other persons who consent to testify as to the matters known or reasonably available to" the corporation. Please produce all documents forty-eight (48) hours prior to the deposition.

> **DATE:**     **To be determined**
>
> **TIME:**     **To be determined.**
>
> **PLACE:**    **To be determined.**

The matters on which examination is requested and the documents deponent is required to produce are as follows:

1.      Testimony and documents evidencing or relating to any publications, website information or other means of communication where tire life or tire age is or was communicated to the general public.

2.      Testimony, documents, warnings, website information, etc. concerning age as a factor in the cause of tread separation failures.

3.      Testimony and documents evidencing or relating to the expected or intended useful life of the said product or similar products.

4.      Testimony, documents, warnings, website information, etc. concerning proposed or implemented Age Limitations Warnings by Defendants.

5.      Testimony and documents concerning any written proposals by this Defendant and/or any Cooper entity on aging, tire limits or "limit dates" for passenger car tires.

6.      Testimony and documents concerning any peer review, technical bulletins, comments, memorandum, or/and correspondence that relate or refer to the aging of tires or time limits on the use of tires.

7.      Testimony and documents evidencing or relating to the design and manufacture of the Cooper 295/75 22.5 tire (hereinafter referred to as "the product"), that is the subject of this litigation.

8.      Testimony and documents evidencing or relating to any changes made to the design specifications, skim stock, rubber compounds, tire components or other design features for the subject tire line.

9.      Testimony and documents evidencing or relating to adjustment data for the subject tire.

10.     Testimony and documents evidencing or relating to field performance of the subject tire line.

11.     Testimony and documents evidencing or relating to marketing and advertising of the subject tire line.

12.     Testimony and documents evidencing or relating to qualification testing, durability testing, performance testing, and belt-edge tests for the subject tire and similar tires.

13.     Testimony and documents evidencing or relating to design techniques to prevent tire tread-belt separations.

14.     Testimony and documents evidencing or relating to causes of tire tread-belt separations.

15.     Testimony and documents evidencing or relating to lawsuits or claims that a Cooper 295/75 22.5, tire experienced a detread or tread-belt separation.

16.     Testimony and documents evidencing or relating to documents, instructions, or warnings which accompanied the shipment of said product.

17.     Testimony and documents evidencing or relating to hazards associated with the detread or tread-belt separation of a Cooper 295/72 22.5 tire.

18.     Testimony and documents evidencing or relating to documents, instructions, or warnings which accompanied the shipment of said product.

19.     Testimony and documents evidencing or relating to the occurrence made the basis of Plaintiff's complaint.

20.     Testimony and documents evidencing or relating to the proper use of said product.

Further, note that, pursuant to Rule 30(b)(6), said corporation shall designate one or more officers, directors, managing agents, or other persons who consent to testify as to matters known or reasonably available to "said corporation."

Pursuant to Rule 30(b)(5), Plaintiff requests that, at the time and place of taking said deposition duces tecum, said corporation produce for inspection and copying all documents that relate to the matters on which examination is requested.

21.     Identify all claims, complaints and lawsuits concerning tires that allegedly suffered tread separations more than seven (7) years after the date of manufacture.

22.     Please produce design documents and documents indicating design modifications to the subject Cooper 295/72 22.5 tires.

23.     Please produce copies of complaints, petitions, written complaints, claims or demand letters concerning tires that allegedly suffered tread separations more than seven (7) years after the date of manufacture.

24.     Please produce copies of all maintenance records for the tires on the subject vehicle.

25.     Please produce copies of all information regarding any work performed on the subject vehicle's tires.

Said deposition(s) shall continue from time to time until completed.


                                        /s/ LaBarron N. Boone
                                        LABARRON N. BOONE (BOO029)
                                        Attorney for Plaintiffs

OF COUNSEL:

4

BEASLEY, ALLEN, CROW,
 METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Post Office Box 4160
Montgomery, Alabama  36103-4160
 (334) 269-2343 – Telephone
(334) 954-7555 – Facsimile


Please serve this deposition notice by certified mail with the Complaint on the following

defendant:

Cooper Tire & Rubber

<u>**TO BE SERVED WITH COMPLAINT**</u>